UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John Phillip Hamre, | Case No. 18-cv-2958 (NEB/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Officer Sprout, et al., | |
| Defendants. | |

This matter came before the undersigned United States Magistrate Judge upon routine supervision of the cases that pend before the Court pursuant to a general assignment made in accordance with the provision of 28 U.S.C. § 636.

For the reasons discussed herein, the undersigned recommends the present action be dismissed without prejudice. Plaintiff John Phillip Hamre has also filed a Motion for Complaint Package, [Docket No. 21], requesting copies of various court forms specific to the present case; the Court recommends Plaintiff's Motion for Complaint Package, [Docket No.21], be denied without prejudice as moot.

Plaintiff's Complaint's caption names as Defendants "Officer Sprout #326"; "Ryan Nelson #207; "Officer Fildes #330"; "Robert Matheson #206"; the City of Moorhead, Minnesota; and "Officer Lopez #316." (Compl., [Docket No. 6], at 1).[1] The Complaint's list of Defendants in the body of the form-Complaint also includes Wayne Ebbinger, "Ch[ie]f of Police"; the Fargo Forum, and the Moorhead Police Department. (Id. at 4).

---

[1] Because the Complaint is not consecutively paginated, references to it use the page numbers generated by the Court's ECF filing system.

The crux of Plaintiff's Complaint concerns an encounter on December 31, 2015, between Plaintiff and numerous police officers employed by the City of Moorhead. (Id. at 5–7). Plaintiff alleges that while he was unloading a truck at a storage facility, law enforcement officers approached him and (1) falsely accused him of being involved in various burglaries; (2) suggested that he had been "on the sauce"; and (3) were rude to him and kept him out in freezing temperatures for an inappropriately long time. (Id. at 5–6). Several days later, various purported media outlets (including the Fargo Forum) published stories stating that a Moorhead police officer had remembered seeing Plaintiff breaking into a storage facility. (Id. at 5–7). Plaintiff's Complaint purports to bring suit under 42 U.S.C. § 1983, based on these assertions, and Plaintiff seeks monetary damages. (Id. at 1, 8).

Plaintiff initiated the present case on July 5, 2018, by filing his Complaint and accompanying documents in the United States District Court, District of North Dakota. (Compl. [Docket No. 6]). Plaintiff filed an application to proceed in forma pauperis (hereinafter "IFP Application") alongside his Complaint. (Appl. to Proceed In Forma Pauperis [Docket No. 1]). Upon initial review of that IFP Application, the Honorable Alice R. Senechal—United States Magistrate Judge for the United States District Court, District of North Dakota—conditionally granted the IFP Application, on the condition that Plaintiff provide the Court additional financial information. (Order [Docket No. 5]). Plaintiff later provided the requested information, as well as, several additional documents, including letters to the Court. (See, Order [Docket No. 8]).[2]

---

[2] On July 28, 2018, Plaintiff filed a letter. [Docket No. 15]. The letter acknowledges Plaintiff's arrest after the December 2015 encounter, and it states that later in the day on December 31, 2015, he was "released from jail for lack of probable cause." (Id. at 1). Plaintiff then discusses aspects of a pending criminal proceeding against him in Clay County, Minnesota. (See, Id. at 1–3); see also, Register of Actions, State v. Hamre, No. 14-CR-17-805 (Minn. Dist. Ct.) (hereinafter "Hamre Register"), available at http://pa.courts.state.mn.us/default.aspx (last accessed February 19, 2019). That action's docket suggests that the December 2015, encounter eventually led to Plaintiff being charged with one count of possessing burglary/theft tools and one count of receiving stolen property; trial on those charges is presently set for February 26, 2019. See, Hamre Register (noting trial date and listing date of charges as December 31, 2015). Plaintiff's July 28, 2018, letter asserts that a summons issued in the criminal matter was defective, that he

Upon review of all the documents submitted by Plaintiff, the Honorable Alice R. Senechal—United States Magistrate Judge for the United States District Court, District of North Dakota—ordered that the present case be transferred to this District. (Order [Docket No. 19]). In her Order Magistrate Judge Senechal, also dismissed Defendant Fargo Forum from the present action, and noted that '[f]urther review of the complaint pursuant to 28 U.S.C. § 1915A [was] reserved for the transferee court." (Order [Docket No. 19]).

Magistrate Judge Senechal's Order, in relevant part, did two things. (Order [Docket No. 19]). First, the Order dismissed the Fargo Forum as a Defendant, on the grounds that (1) the Fargo Forum was not a "person" or "state actor" subject to suit under § 1983 and (2) Plaintiff's claim against the Fargo Forum appeared to be a defamation claim which one cannot bring under § 1983. (Id. at 4–5). Second, the Order considered venue and determined that the present matter should be transferred to the United States District Court for the District of Minnesota, given that none of the remaining Defendants were North Dakota residents and that the events giving rise to Plaintiff's claims took place in Minnesota. (Id. at 5). The Order also noted that any further prescreening should be done by the transferee court. (Id.).

The Court sees no need or reason to reconsider Magistrate Judge Senechal's determination that Plaintiff qualifies to proceed in forma pauperis nor Magistrate Judge Senechal's dismissal of the Fargo Forum from the present action. Thus, the Court proceeds to screen Plaintiff's Complaint pursuant to 28 U.S.C. § 1915 as to the remaining Defendants.

---

has been unfairly targeted for prosecution, and that his state-court counsel has been ineffective. (See, Letter, [Docket No. 15], at 1–3). Plaintiff's letter appears to be informative in nature as it does not request any relief from this Court. A document included with the letter does seem to be a handwritten motion, but as Magistrate Judge Senechal observed, this seems to be a motion that (1) Hamre presented to the court in the Clay County proceedings, and (2) this Court received only because Plaintiff wrote the previous, handwritten motion on the back of a *different* document that Plaintiff wanted this Court to have to demonstrate ostensible problems with his state-court counsel. (See, Id. at 4–5; Order, [Docket No. 19], at 3 n.1). The Court will consider the letter in its overall review of Plaintiff's action; however, the Court considers the letter to be informative in nature because, even liberally construing the letter, it does not seek any relief from this Court.

An action will be dismissed when an IFP applicant has filed a complaint that fails to state a cause of action on which relief may be granted. 28 U.S.C. § 1915(e); Atkinson v. Bohn, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam); see also, Carter v. Schafer, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[T]he provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service."). In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Varga v. U.S. Bank Nat'l Ass'n, 764 F.3d 833, 838 (8th Cir. 2014). The complaint's factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. In assessing the complaint's sufficiency, the court may disregard legal conclusions that are couched as factual allegations. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

Reviewing Plaintiff's allegations concerning the December 2015, incident, it is evident to this Court that Plaintiff's Complaint fails to state a cause of action for which relief may be granted.

Plaintiff purports to bring claims against all the Defendants in their official capacities. (See, Compl., [Docket No. 6], at 2–4). "A suit against a government official in his or her official capacity is 'another way of pleading an action against an entity of which an officer is an agent.'" Baker v. Chisom, 501 F.3d 920, 925 (8th Cir. 2007) (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 690 n.55 (1978)). Indeed, "[t]he real party in interest in an official-capacity suit is the

4

governmental entity and not the named official." Id. (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)). Therefore, because the remaining individual Defendants are all employees of the City of Moorhead, the Court must consider the official-capacity claims against the remaining Defendants as claims against the City of Moorhead.

However, "[l]iability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." Bolderson v. City of Wentzville, 840 F.3d 982, 985 (8th Cir. 2016) (citing Atkinson v. City of Mountain View, 709 F.3d 1201, 1214 (8th Cir. 2013)). The Eighth Circuit has explained how to prove each of these forms of liability. See, e.g., Brewington v. Keener, 902 F.3d 796, 800–02 (8th Cir. 2018) (discussing legal standards); Bolderson, 840 F.3d at 985–86 (same). But lengthy discussion of each is unnecessary in the present case because Plaintiff's Complaint wholly fails to allege any manner of policy, custom, or failure to train that could support municipal liability. Plaintiff's Complaint involves a single incident that occurred in December 2015. Therefore, the undersigned recommends that all official capacity claims in Plaintiff's Complaint be dismissed.

The recommended dismissal of Plaintiff's official capacity claims leaves for this Court's consideration Plaintiff's individual capacity claims against the Defendant officers.

With respect to Defendant Ebbinger, Plaintiff's Complaint fails to state a claim because his Complaint fails to allege that Defendant Ebbinger had any involvement with the December 2015, incident. (See, Compl., [Docket No. 6], at 5–7). If Plaintiff intended to raise claims against Defendant Ebbinger because he was the supervisor of other officers employed by the City of Moorhead, that argument necessarily fails.

To establish a supervisor defendant's personal liability, a plaintiff "'must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [the plaintiff's] constitutional rights.'" Marsh v. Phelps Cty., 902 F.3d 745, 754 (8th Cir. 2018) (quoting Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006)). Plaintiff's Complaint is devoid of any such allegations regarding Defednant Ebbinger, and so any claims it purports to make against him should be dismissed.

Plaintiff's Complaint does allege that the remaining Defendants were all involved in the December 2015, encounter with Plaintiff. (Compl., [Docket No. 6], at 5–7).[3] A plaintiff may use § 1983 to enforce his or her constitutional rights, or (in some circumstances) to enforce federal statutory rights. See, e.g., Kennedy v. City of Braham, 67 F. Supp. 3d 1020, 1028–29 (D. Minn. 2014).

In the present case, the Court's review of Plaintiff's Complaint finds no allegations that plausibly constitute a violation of a constitutional right or federal statute. Much of the Complaint seems to suggest that the Defendant officers provided information to media entities that later published allegedly false stories about Plaintiff; however, Plaintiff only implies as much as he does not specifically allege that an officer spoke to the media or provide a suggestion as to which officer he believes spoke to the media. Plaintiff's claim is a state law defamation claim. As Magistrate Judge Senechal, and numerous other Court have, pointed out, plaintiffs cannot use § 1983 to bring state law defamation claims. (See, Order, [Docket No. 19], at 4–5 (citing Miner v. Brackney, 719 F.2d 954, 955 (8th Cir. 1983) (per curiam))); see also, e.g., Occhino v. Lannon, 150 F.R.D. 613,

---

[3] The Court notes that a review of the factual allegations in Plaintiff's Complaint demonstrates that the factual allegations in Plaintiff's Complaint fails to specifically mention two Defendants—Robert Matheson and "Officer Lopez." (See, Id. at 5–7). Instead, Plaintiff appears to rely on his later generic reference to the officers as a collective to include Defendant Matheson and Defendant Officer Lopez. This may well be enough to justify dismissal of those two Defendants, but the Court need not decide the point, given that—as the following discussion shows—the alleged conduct described in the Complaint is insufficient to raise a claim under § 1983.

6

626 n.12 (D. Minn. 1993) (stating that "as a general proposition," defamation is "not actionable" under § 1983) (citing Burton v. Livingston, 791 F.2d 97, 99 (8th Cir. 1986)). Thus, any purported defamation claim by Plaintiff must be dismissed.

The Court reaches a similar conclusion regarding the remaining claims in Plaintiff Complaint. Various allegations in the Complaint surrounding the December 2015, incident suggest that certain officers said derogatory things to Plaintiff: Defendant "Officer Sprout" allegedly accused Plaintiff of "burglary, stolen items [and] theft"; Defendant Nelson allegedly said that he remembered Plaintiff "from being a guard at the old Cass County Jail" and that Plaintiff "use to be on the sauce"; and Defendant "Officer Fildes" allegedly accused Plaintiff of being involved in several other robberies. (Compl., [Docket No. 6], at 5–6). Allegations of such comments do not support a § 1983 claim because verbal insults generally do not present a constitutional violation. See, e.g., Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000) (citing Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir. 1985)); Johnson v. Fondren, No. 08-cv-0509 (MJD/AJB), 2008 WL 4057311, at *5 (D. Minn. Aug. 26, 2008) (citing Doe and Martin).

In Johnson, plaintiff brought a § 1983 action alleging that defendants in that case "made various impertinent and degrading comments to him about his race, his religion, his intelligence, and his general character and demeanor" which plaintiff believed "violated his federal constitutional rights." Johnson, 2008 WL 4057311 at *5. The Johnson Court held that "while offensive verbal harassment of prisoners is obviously inappropriate and unprofessional, such conduct will not, by itself, support a federal civil rights claim." Id. (citing Martin, 780 F.2d at 1338; Doe, 214 F.3d at 955).

Likewise in Martin, the Eighth Circuit Court of Appeals found that no constitutional violation had occurred when defendants allegedly called plaintiff "obscene" names, "verbally

abused" him, and "verbally threatened" plaintiff. Martin, 780 F.2d at 1338. The Martin Court found that these actions did not rise to the level of a constitutional violation, and therefore, the plaintiff there had failed to state a claim upon which relief could be granted. Id.

In Doe, an elementary school teacher was alleged to have engaged in "extensive" verbally "abuse of students." Doe, 214 F.3d at 955. Specifically, he was accused of "yelling and screaming at students, using foul language, telling students that their handwriting 'sucks,' telling students that 'if you had one eye and half a brain, you could do this' calling students 'stupid,' and referring to students as 'bimbos,' fatso,' and the 'welfare bunch.'" Id. The Doe Court found that while it was "appalled at his demeaning and belittling references to his student, his use of patently offensive language did not violate his students' constitutional rights" because demeaning comments, insults, and verbal abuse are "normally not a constitutional violation. Id.

A similar result is reached in the present case. Even accepting as true all the factual assertions in Plaintiff's Complaint and drawing all inferences in Plaintiff's favor, the factual assertions in Plaintiff's Complaint fail to support a § 1983 claim based on the allegedly derogatory remarks made by Defendants to Plaintiff because those remarks do not rise to the level of a constitutional violation. See, e.g., Doe, 214 F.3d at 955; Martin, 780 F.2d at 1339; Johnson, 2008 WL 4057311, at *5.

In his Complaint, Plaintiff next alleges that during the December 2015, incident, the Moorhead Officers kept him outside in subzero temperatures for two hours. (Compl., [Docket No. 6], at 5–6). Liberally construing this assertion in Plaintiff's favor in the context of his overall Complaint, the Court construes this as an allegation that the Moorhead police officers used excessive force during their interaction with Plaintiff in violation of Plaintiff's rights under the Fourth Amendment.

Courts in this District have noted that "[u]nder certain circumstances," unnecessary exposure to the elements can, "in combination with other factors, result in violation of Fourth Amendment rights. Snyder v. Snyder, No. 06-cv-3072 (DSD/JJG), 2007 WL 894415, at *7 (D. Minn. Mar. 21, 2007) (citing Burchett v. Kiefer, 310 F.3d 937, 945 (6th Cir. 2002)), aff'd, 300 F. App'x 440 (8th Cir. 2008). Though Snyder concerned exposure to heat rather than cold, this Court determined that plaintiff failed to adequately plead a Fourth Amendment claim based on exposure to harsh temperatures; the key factor was that the defendant officer experienced the same conditions as the plaintiff. Id. at *8. On the face of Plaintiff's Complaint, it is evident the Defendant officers involved in the December 2015, incident experienced the same environmental conditions as Plaintiff.

Other courts considering Fourth Amendment exposure claims have found plaintiffs' allegations insufficient when they failed to allege (1) that the plaintiff told the defendants that he or she was cold, (2) that the plaintiff needed medical attention following the exposure, or (3) injury due to the exposure. See, e.g., Miller v. Sanilac Cty., 606 F.3d 240, 251 (6th Cir. 2010); Juarez v. Pizana, No. 3:17-cv-0368 (KC), 2018 WL 3846039, at *5 (W.D. Tex. June 29, 2018); Little v. Gore, 148 F. Supp. 3d 936, 952 (S.D. Cal. 2015); Johnson v. Ciesielski, No. 10-cv-1453 (LJM/DML), 2013 WL 139673, at *4 (S.D. Ind. Jan. 8, 2013). While Plaintiff's Complaint does allege two hours of exposure to temperatures below zero, he does not allege that he complained to the officers that he was cold, that he needed medical attention after the incident, or that he experienced any injury from the exposure. (See gen., Compl. [Docket No. 6]). Under the circumstances of the present case, Plaintiff's cursory allegations regarding exposure to cold fail to plausibly allege a violation of his Fourth Amendment.

9

For the foregoing reasons, the undersigned finds that in his Complaint, Plaintiff fails to assert any factual allegations which state a claim upon which relief could be granted. As a result, the undersigned recommends dismissal of this action without prejudice.

The Courts notes that one additional issue warrants discussion. On December 21, 2018, Plaintiff filed a "Motion for Complaint Package," [Docket No. 21], seeking a "complaint package" containing forms specific to the present case, including "the proper complaint forms, summons, [a] cover sheet compatible to Form JS-44," and a form for applying for in forma pauperis status. (Mot. for Complaint Package [Docket No. 21]). Given that the Court recommends dismissal of this action without prejudice, the Court recommends denying without prejudice as moot Plaintiff's "Motion for Complaint Package." [Docket No. 21]. To the extent Plaintiff seeks generic forms which are not specific to the present case, those forms are available on the Court's public website or from the Clerk of Court's office without the need for an order of this Court.

Therefore, based upon the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. This matter be **DISMISSED without prejudice**; and
2. Plaintiff's "Motion for Complaint Package," [Docket No. 21], be **DENIED**.

Dated: February 20, 2019             s/ Leo I. Brisbois_____
                                     Leo I. Brisbois
                                     United States Magistrate Judge

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).